IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ROXANE STEWART,                    )
                                 )
           Plaintiff,         )
                                 )
v.                              )        No. 07-2605-STA-dkv
                                 )
TRUMBULL LABORATORIES, LLC,    )
a Tennessee Limited Liability Company,    )
                                 )
           Defendant.       )

_____

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Defendant Trumbull Laboratories, LLC's Motion for Summary Judgment (D.E. #26) filed on February 16, 2009. For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

Plaintiff took FMLA leave from January 31, 2006 to February 21, 2006. Def.'s Statement of Undisputed Facts. ¶ 1. During her leave Plaintiff had surgery and then was released to work without restrictions. *Id*. at ¶ 2. According to Defendant, Plaintiff was absent or took time off from work with Defendant on twenty-two separate dates during the period beginning April 17, 2006 and ending August 21, 2006. *Id*. at ¶ 3. Defendant alleges that Plaintiff worked at another job in the twenty-fours immediately prior to her absence (or time off) from her regular employment with Defendant on most of the days in question. *Id*. at ¶¶ 4-25. Plaintiff did not

1

have sufficient time-off to compensate her for work missed on the twenty-two days at issue.  *Id.* at ¶ 26.  It is undisputed that on May 26, 2006, Plaintiff left work before completing her shift with Defendant in order to attend a real estate closing.  *Id.* at ¶ 27.  It is further undisputed that on June 26, 2006, Plaintiff missed work to accompany her husband to a doctors appointment.  *Id.* at ¶ 28.  Plaintiff's absences from work with Defendant on the twenty-two dates in question were not related to the treatment of sleep apnea.  *Id.* at ¶ 29.  Plaintiff did not provide any documentation to Defendant that her twenty-two absences were related to the treatment of her sleep apnea.  *Id.* at ¶ 30.  Defendant issued Plaintiff written warnings concerning her poor attendance in June 2006 and again in July 2006.  Def.'s Memo. in Supp. 2.  Plaintiff failed to notify Defendant that she would not be at work on August 21, 2006.  Def.'s Statement of Undisputed Facts. ¶ 31.  Plaintiff failed to call a supervisor to inform that she would not be at work on August 21, 2006.  *Id.* at ¶ 32.  Plaintiff had access to a copy of Defendant's employee handbook.  *Id.* at ¶ 33.[1]

While Plaintiff admits that she did take FMLA leave from January 31 to February 21, 2006, Plaintiff contends that she submitted the proper forms to give Defendant notice that her FMLA leave was taken for the purpose of treating a chronic disorder, sleep apnea, and that her condition would require intermittent leave for an unknown period thereafter.  Pl.'s Resp. to Def.'s Undisputed Facts. ¶ 1.  Plaintiff grants that she did not have job restrictions upon her return to work in February 2006, yet she alleges that her doctor had certified that she would need

---

[1] Many of the undisputed facts stated by Defendant are based on matters deemed admitted in a request for admissions propounded to Plaintiff on November 25, 2008.  Prior to filing her response to the instant Motion, Plaintiff had not responded to the request for admissions.  Defendant asks that the Court deem the matters admitted pursuant to FRCP 36(a)(3).

ten additional office visits and intermittent leave for a period of time following her recovery from surgery. *Id*. at ¶ 2. Plaintiff denies that she was working a second job during the twenty-four hours prior to missing work with Defendant on the twenty-two dates at issue between April and August 2006. *Id*. at ¶ 3. Although Plaintiff does not remember the exact dates she missed during this period of time, she contends that eleven of her absences were related to her sleep apnea, that she was not "absent" on six of the dates given by Defendant, that two of the dates were not related to her condition, and that she does not have information about three other dates. *Id*. Plaintiff avers that she called in to her supervisor on each date where she was ill due to her condition and that her supervisor understood that those absences were related to her condition. *Id*. Plaintiff provided doctors notes on dates when she saw her physician. *Id*.

According to Plaintiff, Defendant did not have a system in place to accurately track an employee's use of FMLA leave. *Id*. Defendant issued three written reprimands to Plaintiff for taking time off without having sufficient paid time-off available. *Id*. at ¶¶ 43, 45. Julie Millican, Plaintiff's supervisor, issued the reprimands but never questioned Plaintiff to determine whether her absences from work were related to her condition even though Millican concedes that an employee's use of FMLA leave is not subject to discipline. *Id*. at ¶ 44. Plaintiff received low performance reviews which denied her the opportunity to have a pay raise. *Id*. at ¶ 46. Millican suspected that Plaintiff was working a second job, which Plaintiff admits was true up until December 2005, and that this was the cause of her poor attendance. However, Millican never questioned Plaintiff directly about her suspicions. *Id*. at ¶ 47.

In its Motion for Summary Judgment, Defendant argues that it terminated Plaintiff due to her excessive and unexplained absences from work and that this had nothing to do with her

FMLA leave.  Defendant contends that Plaintiff's FMLA leave concluded upon her return to work on February 21, 2006.  Plaintiff had not accrued sufficient paid leave for the twenty-two days between April and August 2006 on which she missed work.  Defendant had no indication that Plaintiff's absences were related to her health condition.  For these reasons, Plaintiff cannot show that Defendant retaliated against her for the exercise of her FMLA rights.  Under the *McDonnell-Douglas* burden-shifting framework, Defendant argues that Plaintiff cannot show that her absences were related to her sleep apnea or that there was a causal connection between her termination and the exercise of some protected right.  Even if Plaintiff could make out her prima facie case, Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff, namely, her excessive and unexplained absences.  Finally, Plaintiff cannot show that this legitimate reason was pretext for discrimination because the undisputed facts demonstrate that Defendant's proffered reason is true.  Therefore, Defendant contends that it is entitled to summary judgment.

In opposition, Plaintiff argues that issues of material fact exist which preclude summary judgment.  First, Plaintiff points out that the undisputed material facts upon which Defendant relies are based almost entirely on facts deemed admitted from requests for admissions that Defendant had propounded to Plaintiff in November 2008.  Plaintiff argues that counsel simply overlooked the requests for admissions at the time they were propounded and now seeks leave to respond to them out of time.  Plaintiff further contends that the requests for admissions are burdensome and duplicate other discovery which Defendant already had in its possession such as the extensive deposition testimony of Plaintiff herself as well as documents produced by Plaintiff.  According to Plaintiff, this discovery addressed many of the facts Defendant sought in

4

its request for admissions without putting Plaintiff to the additional effort of responding to the requests.  Plaintiff argues that the Court should permit Plaintiff to respond to the admissions now because it would promote the presentation of the merits of the action and it would not prejudice Defendant in maintaining or defending the action on the merits.  In short, Plaintiff states, "Defendant is attempting to cheaply produce 'facts' in support of summary judgment and avoid adjudication on the merits by ignoring documentary information it had for months and sworn responses it received in two days of Plaintiff's deposition testimony."

Second, Plaintiff argues that she can make out a prima facie case under the FMLA under either an interference theory or a retaliation theory.  With respect to the interference theory, Plaintiff can demonstrate that Defendant interfered with either her FMLA right to medical leave or to reinstatement following her FMLA leave.  Plaintiff's FMLA certification from her physician indicated to Defendant that Plaintiff suffered from a chronic condition and would require intermittent leave for an unknown period.  Plaintiff had discussed her condition at work, and her supervisor was aware of her sleep apnea.  When Plaintiff missed work due to her condition, she phoned her supervisor and referenced her condition.  When she saw her physician for treatment, she provided a doctors note.  Thus, Plaintiff gave Defendant adequate notice of her need for and intent to take FMLA leave.  Furthermore, Defendant had approved Plaintiff's leave and then interfered with her leave by terminating her.

In the alternative, Plaintiff argues that she can make out her claim for retaliation.  Plaintiff engaged in protected activity by taking FMLA leave, missing work due to her serious health condition, and asking for permission from Defendant to participate in a sleep study.  Plaintiff also suffered an adverse employment decision by virtue of the poor performance reviews she received

5

and her eventual termination.  Plaintiff can demonstrate a causal connection between her

protected activity and her termination due to their temporal proximity.  Defendant's proffered

reason is pretextual because Defendant knew that Plaintiff was absent from work primarily on

intermittent FMLA leave because of her serious health condition.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that

> a judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the moving party is entitled
> to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[3]  When the motion is supported by documentary proof such as

depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

present some "specific facts showing that there is a genuine issue for trial."[4]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[5]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

6

verdict.[6]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9]  Finally, the "judge may not make credibility determinations or weigh the evidence."[10]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

## ANALYSIS

### I.  Requests for Admissions

Under Fed.R.Civ.P. 36(b), a request for admissions which is not responded to within the applicable time period "is conclusively established unless the court on motion permits

---

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id*. at 251-52 (1989).

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322.

7

withdrawal or amendment of the admission."[12]  The Sixth Circuit has opined that Rule 36 "is essentially intended to facilitate proof at trials by obviating the need to adduce testimony or documents as to matters that are really not in controversy."[13]  A district court is vested with discretion "to permit a longer time for a written answer to a request for admissions and to accept 'the filing of an answer that would otherwise be untimely.'"[14]  As a result, "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted."[15]  A party seeking to amend or withdraw its responses to a request for admissions may do so even without a formal motion.[16]  A withdrawal "may be imputed from a party's actions," such as the filing of a belated denial.[17]

Pursuant to Rule 36(b), the district court may in its discretion permit withdrawal (1) "when the presentation of the merits of the action will be subserved thereby," and (2) "when the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."[18]  With respect to the prejudice factor, "[t]he prejudice contemplated by [Rule 36(b) ] is not simply that the party who

---

[12] *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

[13] *U.S. v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009).

[14] *Id*. (citing *Gutting v. Falstaff Brewing Corp.,* 710 F.2d 1309, 1312 (8th Cir.1983)).

[15] *Id*.

[16] *Kerry Steel,* 106 F.3d at 153-54.

[17] *Petroff-Kline*, 557 F.3d at 293-294.

[18] *Kerry Steel,* 106 F.3d at 154.

initially obtained the admission will now have to convince the fact finder of its truth."[19]

Prejudice of this type "relates to special difficulties a party may face caused by a sudden need to

obtain evidence upon withdrawal or amendment of an admission."[20]

The Court will permit Plaintiff to file late responses to Defendant's request for

admissions.  As an initial matter, Plaintiff failed to respond to the admissions for over four

months.  The Court finds Plaintiff's proffered reasons for the oversight unconvincing.  However,

based on the factors set forth in Rule 36(b), it does appear to the Court that Plaintiff should be

allowed to provide late responses to the requests.  First, withdrawal in this case will facilitate the

presentation of the merits of the action.  Plaintiff points out that the parties had conducted

significant discovery and that Defendant was already in possession of a substantial amount of

information prior to serving Plaintiff with the request for admissions.  According to Plaintiff, this

discovery including Plaintiff's deposition testimony already confirmed or denied several facts

contained in the request for admissions.  It appears to the Court that Defendant's request for

admissions sought some information for which it had already obtained discovery such as proof

that Plaintiff had not worked at a second job during the relevant dates in 2006.  In light of the fact

that independent evidence exists to establish at least some of the admissions, it appears to the

Court that withdrawal would promote a presentation of the merits of the action.

Likewise, Defendant has not indicated how withdrawal would prejudice its defense on the

merits.  It is true that should the Court deem them admitted, the requested admissions appear to

---

[19] *Id*. (quoting *Brook Village North Assoc. v. General Elec. Co.,* 686 F.2d 66, 70 (1st Cir. 1982)).

[20] *Id*.

entitle Defendant to summary judgment in this case.  However, deeming the requests admitted would require the Court to ignore other evidence which would go to create material issues of fact and preclude summary judgment.  The facts to be deemed admitted cover what appear to be ancillary issues like whether Plaintiff worked a second job during 2006.  The admissions reach material issues as well such as whether Defendant had notice of Plaintiff's certification for intermittent FMLA leave beyond February 21, 2006, or whether Plaintiff informed Defendant that her missed days of work were due to her serious health condition.  For example, Defendant asks the Court to deem admitted the fact that Plaintiff's absences on the twenty-two days of missed work were not related to her sleep apnea.  Yet according to Plaintiff's deposition, her supervisor was aware that the sick days were necessitated by her sleep apnea.  Plaintiff testified that she continued to telephone her supervisor on days when her sleep apnea and its resulting health problems forced her to miss work.  Plaintiff further averred that she inquired about the need to complete FMLA paperwork regarding her sick days but was told by Millican that paperwork was unnecessary.  Thus, it is clear that discovery which Defendant already had in its possession contradicted several of the admissions sought by Defendant in its request.  Absent some showing to the contrary by Defendant, the Court holds that withdrawal will not prejudice its defense on the merits.

Having found that withdrawal of the admissions will advance the presentation of the merits of the action and not prejudice Defendant's defense on the merits, Plaintiff is hereby permitted to withdraw her admissions and serve late answers to the request for admissions on Defendant.  The facts admitted in the requests are in controversy in this case.  Therefore, deeming the facts admitted will not serve the purpose of Rule 36 because the admissions will not

10

facilitate proof at trial by obviating the need to adduce testimony or documents as to matters that are really not in controversy.

## II. FMLA Claims

In the Motion for Summary Judgment, Defendant argues that Plaintiff cannot make out her prima facie case of retaliation under the FMLA.  As Plaintiff correctly points out in response, Plaintiff may allege a retaliation claim or an interference claim pursuant to the FMLA.  In either case, material issues of fact exist which preclude summary judgment.  As a result, Defendant's Motion must be denied.

Pursuant to the FMLA, an eligible employee is entitled to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee."[21]  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."[22]  An employee need not specifically mention the FMLA when taking leave.[23]  All the employee must do is notify the employer that FMLA-qualifying leave is needed.[24]

---

[21] 29 U.S.C. § 2612(a)(1)(D).

[22] 29 U.S.C. § 2611(11).

[23] *Arban v. West Pub. Corp.*, 345 F.3d 390, 400 (6th Cir. 2003).

[24] 29 C.F.R. § 825.303(b).

The FMLA provides three types of leave to employees with a serious health condition: (1) one block of leave of 12 weeks or fewer; (2) intermittent leave taken in separate periods of time due to a single illness or injury, and which may include leave periods from an hour or more to several weeks; and (3) a reduced leave schedule pursuant to which the employer reduces the employee's normal work hours, usually to a part-time basis.[25]  Intermittent leave may be taken for absences where the employee is incapacitated because of a chronic serious health condition "even if he or she does not receive treatment by a health care provider."[26]  An employee can invoke intermittent leave in one of two ways: (1) the employee may directly request intermittent leave according to the statutory requirements, or (2) the employee may provide the employer sufficient notice of FMLA-qualifying circumstances so as to oblige the employer to inquire further into whether the situation fell within the ambit of the FMLA.[27]  Once an employee requests leave, the employer has a duty "in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee."[28]

Leave of all kinds including intermittent leave may also be foreseeable or unforeseeable. Where the need for leave is unforeseeable, an employee may seek leave for a condition "for

---

[25] *Coker v. McFaul*, 247 Fed. Appx. 609, 615-616 (6th Cir. 2007); *see also Hoffman v. Prof. Med. Team,* 394 F.3d 414, 418 (6th Cir. 2005) (citing 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800, 825.203(a)).

[26] 29 C.F.R. § 825.202.

[27] *Adams v. Honda of America  Mfg., Inc.*, 111 Fed. Appx. 353, 355 (6th Cir. 2004) (citing 29 C.F.R. § 825.303(b); *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 724-25 (6th Cir. 2003); *Willard v. Ingram Constr. Co., Inc.*, 194 F.3d 1315 (6th Cir. 1999)).

[28] 29 C.F.R. § 825.300.

12

which the employer has previously provided the employee FMLA-protected leave."[29]  In those

instances, the employee must request leave by reference to "either the qualifying reason for leave

or the need for FMLA leave."[30]  "Calling in 'sick' without providing more information will not

be considered sufficient notice to trigger an employer's obligations under the Act."[31]  For its part,

the employer has a duty to gather any additional required information "through informal

means."[32]

## A.    *Interference Theory*

The Sixth Circuit has held that "two distinct theories for recovery on FMLA claims

exist."[33]  The first theory is an entitlement or interference theory based on 29 U.S.C. §

2615(a)(1): "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise

of or the attempt to exercise, any right provided in this subchapter."[34]  The interference theory is

derived from the FMLA's creation of substantive rights.[35]  If an employer interferes with the

FMLA-created right to medical leave or to reinstatement following the leave, a violation has

---

[29] 29 C.F.R. § 825.303.

[30] *Id*.

[31] *Id*.

[32] *Id*.

[33]  *Arban*, 345 F.3d at 400.

[34] *Id*. The entitlement theory, which does not seem to apply in this case, is based on 29 U.S.C. § 2614(a)(1): "any eligible employee who takes leave ... shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position."

[35] *Arban*, 345 F.3d at 401.

13

occurred.[36]  "The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA-for example, a twelve-week leave or reinstatement after taking a medical leave."[37]  Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.[38]  An employee must establish that she was denied substantive rights under the FMLA "for a reason connected with [her] FMLA leave."[39]  "Such a reason need not be retaliation"[40] but may include "discouraging an employee from using [FMLA] leave."[41]

In order to establish a violation of the FMLA under the interference theory, the employee must show (1) that she is an "eligible employee" as defined in 29 U.S.C. § 2611(2); (2) the defendant is an "employer" as defined in 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.[42]

The Court holds that Plaintiff in the case at bar can make out her prima facie case under

---

[36] *Id*. (citing *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir. 1999)).

[37] *Id*. (citing *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir. 1998)).

[38] *Id*.

[39] *Id*. at 402 (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 961 (10th Cir. 2002)).

[40] *Id*. (citing  *Miller v. Defiance Metal Prods., Inc.,* 989 F.Supp. 945, 946 (N.D. Ohio 1997) (plaintiff's termination due to absenteeism caused by a medical condition constituted "an interference under FMLA").

[41] 29 C.F.R. § 825.220(b).

[42] *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

an interference theory, and questions of material fact exist which make summary judgment

inappropriate.  It is undisputed that Plaintiff was an eligible employee and Defendant was an

employer as defined in the FMLA.  The parties disagree over whether Plaintiff was entitled to

leave on the dates in question and whether Plaintiff gave Defendant proper notice that she

intended to take FMLA leave.  For her part Plaintiff has adduced evidence from which a

reasonable juror could conclude that she was entitled to leave and gave notice to Defendant of

her intention to take intermittent leave.  Plaintiff has provided deposition testimony from her

supervisor Julie Millican stating that Plaintiff submitted a Department of Labor certification

completed by her treating physician.[43]  Her physician certified that Plaintiff's sleep apnea was a

"chronic condition" meaning that her condition "required periodic visits for treatment by a

health-care provider"; "continues over an extended period of time including recurring episodes of

a single underlying condition"; and "may cause episodic rather than a continued period of

incapacity."[44]  The certification stated that "the probable duration of the patient's present

incapacity" was unknown.[45]  Most importantly, Plaintiff's physician certified that it would "be

necessary for the employee to take work only intermittently...as a result of the condition" for an

unknown period of time.[46]  The certification also stated that Plaintiff would have surgery on

January 31, 2006, would be unable to work for two weeks following surgery, and would need ten

---

[43] Millican Depo. 206:11-16, Jan. 8, 2009.

[44] *Id*. at 207:15-208:11.

[45] *Id*. at 210:15-21.

[46] *Id*. at 210:22-211:4.

(10) follow-up visits with her physician.[47]

Considering the contents of Plaintiff's FMLA certification in the light most favorable to Plaintiff, the Court holds that Plaintiff can establish that she was entitled to intermittent leave under the FMLA and that she gave Defendant notice of her intention to take intermittent leave. The parties agree that Defendant approved Plaintiff for FMLA leave based on the certification provided by Plaintiff's physician. While Defendant contends that Plaintiff's FMLA leave covered only her surgery, recovery, and follow-up care through February 21, 2006, the Court finds that there is a factual question about whether the certification also put Defendant on notice that Plaintiff would require intermittent leave for an unknown period after her surgery due to her sleep apnea. Based on Millican's deposition, it appears to the Court that the certification arguably indicated to Defendant that Plaintiff was requesting intermittent leave even though the duration of the intermittent leave was unknown. Defendant does not argue that the certification failed to meet the statutory requirements to invoke intermittent leave or that Plaintiff failed to provide Defendant with sufficient notice of FMLA-qualifying circumstances which would have shifted responsibility to Defendant as the employer to inquire further into whether the situation fell within the ambit of the FMLA.[48] Therefore, the Court concludes that Plaintiff can prove the third and fourth elements of her prima facie case under an interference theory.

As for the fifth factor, whether Defendant denied Plaintiff FMLA benefits to which she

---

[47] *Id*. at 211:23-212:13.

[48] The record is also unclear as to whether Defendant fulfilled its duties to designate the leave as FMLA-qualifying and to give notice of the designation to Plaintiff as required by 29 C.F.R. § 825.300.

was entitled, the Court also finds that Plaintiff has adduced evidence to make this showing.  In this case a factual question exists about the manner in which Plaintiff reported her illnesses on the dates in question between April and August 2006.  Plaintiff testified in her deposition that Millican instructed her to call Millican on days when she needed to miss work.[49]  Defendant never required Plaintiff to complete additional FMLA paperwork for any of the time after March 3, 2006, the date on which Millican issued a "fresh start" memo to Plaintiff regarding her attendance.[50]  According to Plaintiff, Millican told her that it was not necessary because "it would fall back to my surgery" and because "I didn't have surgery and I wasn't out a long period of time."[51]  Plaintiff testified that "it was understood" between herself and Millican that these sick days were related to her sleep apnea.[52]  When Plaintiff needed to miss work due to her condition, she would call in to Millican and let her know that her illness was related to her sleep apnea: "I would just call and let her know whatever was wrong.  If I had been up all night, hadn't slept, or was nauseated from not having sleep, that type of thing, she said she understood and didn't want me to come in if I was feeling that bad."[53]  Although Millican recorded Plaintiff's days off due to illness simply as "sick" on a calendar, Plaintiff testified that when she called in to Millican, she

---

[49] Stewart Depo. 125:22-126:2, Oct. 23, 2008.

[50] *Id*. at 126:19-24.

[51] *Id*. at 126:24-127:6

[52] *Id*. at 127:13-14.  *See also* 127:22-128:2: "Q.  Did you tell her this is related to my sleep apnea?  A.  Yes.  She knew.  Julie knew.  I would go in the office and talk to her about it.  She said she understood."

[53] *Id*. at 128:11-16.

would distinguish whether her illness was related to her sleep apnea or not.[54]  Plaintiff further claims that she produced additional letters from her treating physician about her condition as well as a sleep study indicating that her condition was worsening.[55]

Examining this evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff can establish that Defendant denied her FMLA benefits to which she was entitled.  The intermittent leave to which Plaintiff was entitled here qualified as unforeseeable leave.  Because Defendant had already provided FMLA leave to Plaintiff related to her sleep apnea, Plaintiff must establish that she requested leave by referring either to her sleep apnea or the need for FMLA leave.  "Calling in sick" alone is not sufficient.  However, it would not be necessary for Plaintiff to receive treatment from her physician in order for the sick days to qualify as FMLA leave.  Plaintiff has testified that when she called in sick and spoke to Millican, she referred to her sleep apnea and its complications.  According to Plaintiff, Millican was aware of her condition and even had an understanding with Plaintiff.  When her illness or need for time off was not related to her sleep apnea, Plaintiff appropriately informed Millican that her need for time off was unrelated.  Plaintiff further inquired about the need to provide additional FMLA documentation and was told by Millican that it was not necessary under the circumstances.  Based on this testimony, Plaintiff can show that she gave Defendant sufficient information to put Defendant on notice that her absences were FMLA leave-related to her serious health condition.

At that point, Defendant had a duty to gather any additional required information

---

[54] *Id*. at 128:17-129:3.

[55] *Id*. at 130:1-12.

"through informal means" from Plaintiff about her condition or treatment from which Defendant could ascertain whether the time off qualified as FMLA leave.  There is no evidence that Defendant took such steps.  According to Millican's calendar, she recorded Plaintiff's time off simply as "sick" days without reference to the nature of Plaintiff's illness or its relationship to her sleep apnea.  Therefore, Plaintiff has presented information from which a reasonable juror could conclude that Defendant should have determined that Plaintiff's absences were related to the intermittent leave she requested under the FMLA.  Likewise, Plaintiff can show that Defendant denied her right to FMLA leave by treating her absences as a negative factor against her and eventually terminating her employment.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff can make out a prima facie case of interference with her FMLA rights.  Furthermore, Plaintiff has created issues of fact regarding her request for intermittent leave and Defendant's notice that Plaintiff's absences were related to her serious health condition and covered by the FMLA.

**B.     *Retaliation Theory***

The second theory available under the FMLA is a retaliation or discrimination theory grounded in 29 U.S.C. § 2615(a)(2): "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[56]  The regulations implementing the FMLA explain "[a]n employer is prohibited from discriminating against employees ... who have used FMLA leave" and may not

---

[56] *Arban*, 345 F.3d at 400-401.

"use the taking of FMLA leave as a negative factor in employment actions."[57]  More specifically, an employer may not terminate an employee in retaliation for taking leave.[58]  "If the employer is found to have retaliated against the employee for using FMLA leave, the employer is subject to a claim for compensatory damages and, unless the court finds the violation occurred in good faith, additional liquidated damages."[59]

The Sixth Circuit applies the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973) to claims of retaliation under the FMLA where there is no direct evidence of discrimination.[60]  In order to establish a violation of the FMLA under a retaliation theory, the employee must show (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the adverse employment action.[61]  If the employee can establish a prima facie case, then the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its actions.[62]

Based on the same evidence discussed above with regard to Plaintiff's interference theory, the Court finds that Plaintiff can make out a prima facie case for retaliation.  First,

---

[57] 29 C.F.R. § 825.220(c).

[58] *Arban*, 345 F.3d at 403; *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001).

[59] *Arban*, 345 F.3d at 403 (citing 29 U.S.C. § 2617(a)(1)(A)).

[60] *Skrjanc*, 272 F.3d at 314.

[61] *Id.*; *see also Nawrocki v. United Methodist Retirement Communities, Inc.*, 174 Fed Appx. 334, 339 (6th Cir. 2006).

[62] *Skrjanc,* 272 F.3d at 315.

Plaintiff has adduced evidence from which a reasonable juror could conclude that she availed herself of a protected right.  Plaintiff provided Defendant with certification from her treating physician that she had a qualifying serious medical condition and that she would require intermittent leave.  The evidence also shows that Plaintiff indicated to Defendant that her sick days were related to her sleep apnea and that Plaintiff properly invoked the FMLA thus qualifying her time off as intermittent FMLA leave.  Second, it is undisputed that Plaintiff suffered an adverse employment decision.  Plaintiff was subject to discipline at work due to her absences and was eventually dismissed by Defendant.  Third, Plaintiff can show that there was a causal connection between her exercising her FMLA rights and her warning letters, poor performance reviews, and her eventual dismissal.  The warning letters and performance reviews made reference to her attendance, and Defendant finally terminated her employment because of her absences.  Plaintiff has created an issue of fact for the jury to consider whether her absences were FMLA-related.  Therefore, Plaintiff can make out her prima facie case of retaliation.

Shifting the burden of production to Defendant, Defendant must proffer a legitimate, nondiscriminatory reason for its actions with respect to Plaintiff's absences.  Defendant argues that it terminated Plaintiff for excessive absences not related to Plaintiff's serious health condition.  For example, it is undisputed that Plaintiff took time off from work on separate occasions to accompany her husband to a doctors appointment and for a real estate closing.  However, there appear to be significant factual disputes regarding the reasons why Plaintiff was absent from work on many other days between April and August 2006 and indeed for some days whether she was absent at all.  Therefore, the Court holds that issues of fact remain as to Defendant's proffered reason which preclude summary judgment as to Plaintiff's FMLA

retaliation claim.

Having found that Plaintiff can make out a prima face case of retaliation and that genuine issues of fact exist as to Defendant's proffered reasons for its actions, the Court holds that Defendant's Motion should be denied as to Plaintiff's retaliation theory claim.

## CONCLUSION

Plaintiff has adduced specific facts showing that there are genuine issues for trial in this case. The Court holds that the evidence in this case presents a disagreement sufficient to require submission to a jury and is not so one-sided that Defendant must prevail as a matter of law. Therefore, Defendant's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:   April 17, 2009